IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RYAN ANDREWS, SCOTT CRAWFORD,  )
& MARK PERRY,                   )
                                )
          Plaintiffs,           )
                                )        1:12-cv-00441
     v.                         )
                                )
CHRISTOPHER ADAM DAUGHTRY,      )
                                )
          Defendant.            )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

     This is an action by Plaintiffs Ryan Andrews, Scott
Crawford, and Mark Perry (collectively, "Plaintiffs") alleging
the failure of their former bandmate, Defendant Christopher Adam
Daughtry ("Defendant"), to account for profits and provide
authorship credit for certain musical works.  Filed in state
court, the action was removed timely to this court (Doc. 1),
with jurisdiction premised on the existence of a federal
question under the Copyright Act, 17 U.S.C. § 101 *et seq.*
("Copyright Act").

     Two motions are before the court.  Plaintiffs move to
remand the action pursuant to 28 U.S.C. § 1447(c) on the ground
that the court lacks subject matter jurisdiction over the
complaint's five causes of action pleaded only under state law.
(Doc. 15.)  Defendant opposes the motion, contending that

Plaintiffs' claims are disguised federal claims under the Copyright Act and moves to dismiss the complaint on the grounds it fails to state a claim and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 10.) The court heard argument on the motions on January 17, 2013.

For the reasons below, the court finds no basis for federal jurisdiction over Plaintiffs' claims, and thus the motion to remand will be granted. This disposition renders Defendant's motion to dismiss moot.

## I. BACKGROUND

### A. Absent Element Partnership and Songs

The complaint, taken in the light most favorable to Plaintiffs, alleges the following facts:

Plaintiffs and Defendant formed a musical band sometime in 2004 which became known as "Absent Element." (Doc. 3 (Complaint ("Compl.")) ¶ 12.) The purpose of the band was to "combine the time, musical talent, labor, and resources of the four members." (Id. ¶ 13.) Defendant sang lead vocals and played guitar, Plaintiff Perry played lead guitar and sang backup vocals, Plaintiff Andrews played bass guitar, and Plaintiff Crawford played drums. (Id.) From its inception, the band was allegedly a partnership, with all four members writing music and lyrics for its songs, collaborating on the arrangement and recording of those songs, consulting on matters relating to the business of

2

the band, and making decisions based on a majority vote. (Id. ¶¶ 13, 15.) Pursuant to an alleged partnership agreement, the band members also agreed to share equally in the band's profits and losses. (Id. ¶ 15.)

Around December 2004, and in preparation for the release of the band's album, "Uprooted," the band members held a meeting to discuss how the songwriting authorship and credits for the songs on the album would be split among the partners. (Id. ¶ 19.) They allegedly agreed to "equally share in the profits from any songs written by any of the partners as members of and in furtherance of Absent Element, irrespective of the extent of any one band member's contribution to a particular song." (Id. ¶ 20.) The songs would "be owned equally by the four parties." (Id. ¶ 22.) As such, "the proceeds of all band affairs, including proceeds derived from exploitations of songs written in furtherance of Absent Element, were a partnership asset, to be divided equally among the partners." (Id. ¶ 21.) This agreement was reduced to writing and signed by each of the parties. (Id. ¶ 22.)

Following the release of "Uprooted," Absent Element filed a copyright registration for all musical compositions and sound recordings embodied in the "Uprooted" album; the copyright identified all four partners as having an equal interest as co-authors in the seven songs on "Uprooted." (Id. ¶ 23.) This

3

copyright was registered on April 4, 2006, under Registration Number SR0000386167. (Id.) Two of the songs subject to the copyright were entitled "Breakdown" and "Conviction." (Id.)

After recording and releasing "Uprooted," Absent Element continued to produce other works and perform together. (Id. ¶ 25.) Around the summer of 2005, the band wrote the song "Sinking." (Id.) Like the songs contained on "Uprooted," "Sinking" was covered by the Absent Element partnership agreement, meaning that the band members would "equally share in the profits." (Id.)

Finally, at some point prior to June 2006, but perhaps earlier, Defendant wrote a song entitled "Home." (Id. ¶ 32.) Plaintiffs contend that the song was still subject to the partnership agreement in that it was written in furtherance of the partnership and the partners were accordingly entitled to share in profits derived from it. (Id.) Music and lyrics from the songs "Breakdown," "Conviction," "Sinking," and "Home" are now the subject of this lawsuit.

**B. Defendant's Rise to Fame**

In the summer of 2005, the members of Absent Element agreed that, in order to gain greater exposure for the band, Defendant (as lead singer) should audition for one of the national television singing shows. (Id. ¶¶ 28-29.) In fall 2005, Defendant passed an audition call for the popular competition

4

show "American Idol." (<u>Id.</u> ¶ 29.) Defendant competed on the show until May 2006, when he was eliminated in fourth place, though he toured with the "American Idol" cast the following summer. (<u>Id.</u> ¶ 34). During this time, Defendant gained a significant fan base, and Absent Element's popularity increased as well. (<u>Id.</u> ¶ 35.) However, Defendant eventually asked that the band stop selling the "Uprooted" album and remove his name and image from all Absent Element-related items. (<u>Id.</u>) Defendant claimed that this was required by "American Idol" rules, and the band acquiesced to this request. (<u>Id.</u>)

Between the summer of 2006 and November of that year, the Absent Element partnership discontinued their association and dissolved, though the partnership's affairs have not been wound up. (<u>Id.</u> ¶ 45.) In November of 2006, Defendant released his self-titled album, "Daughtry." (<u>Id.</u> ¶ 40.) The "Daughtry" album included three songs at issue – "Breakdown," "Gone," and "Home." (<u>Id.</u> ¶ 42.) Defendant subsequently released his second album, "Leave This Town," in July of 2009, which included the fourth disputed song, "You Don't Belong." (<u>Id.</u> ¶ 43.)

With respect to each of the "Daughtry" songs, Plaintiffs allege the following:

1.  Defendant's song "Breakdown" includes lyrics and music from the Absent Element song "Conviction" and music and lyrics from the Absent Element song "Breakdown."

5

2. Defendant's song "Gone" includes lyrics and music from the Absent Element song "Sinking."

3. Defendant's song "Home" is the Absent Element song "Home" that Defendant wrote prior to June of 2006.

4. Defendant's song "You Don't Belong" includes music from the Absent Element song "Breakdown."

(Id. ¶¶ 42, 43.) Plaintiffs claim that Defendant has received substantial compensation from these songs and his success, including sales of at least five million copies of the album "Daughtry" and one million copies of the album "Leave This Town." (Id. ¶ 44.)

## C. Plaintiffs' Claims

Plaintiffs complain of numerous wrongs: first, that "[Defendant] has not shared with Plaintiffs any profits resulting from the Absent Element Songs embodied in the songs" "Breakdown," "Gone," "Home," and "You Don't Belong" (id. ¶ 46); second, that Defendant has misrepresented himself as the sole songwriter for at least the songs "Breakdown" and "You Don't Belong," despite the fact that they "include music and lyrics" from Absent Element songs covered by the partnership agreement (id. ¶ 47); third, that Defendant has failed to attribute "Breakdown" and "You Don't Belong" to Plaintiffs in the copyright registrations filed by Defendant with respect to those

6

songs[1] (id. ¶ 48); fourth, that Defendant has taken advantage of his position of trust as a partner by failing to disclose to various record/production companies that the songs in question "contain music and lyrics that were written in furtherance" of the partnership and that his partners had the right to share in the proceeds (id. ¶¶ 52, 53); fifth, that Defendant took advantage of his position of trust as a partner by failing to disclose to various record/production companies and the general public that the songs "Breakdown" and "You Don't Belong" include music and lyrics that were jointly written with Plaintiffs (id. ¶ 54); sixth, that Defendant continually used his position as a successful artist to suggest that he would help Plaintiffs advance their careers, but never did so (id. ¶ 56); and seventh, that such representations were made by Defendant so as to "induce Plaintiffs not to pursue remedies sought" in the instant action by offering to collaborate on future work on the condition that no lawsuit be filed (id. ¶ 57).

In the complaint, Plaintiffs plead five separate causes of action. Plaintiffs' first cause of action alleges constructive

---

[1] Copyrights were registered for the "Daughtry" song "Breakdown" on January 2, 2007, Registration Number PA0001166373, and the "Leave This Town" song "You Don't Belong" on September 9, 2009, Registration Number PA0001656909. (Id. ¶ 49.) Plaintiffs assert that in those registrations Defendant misrepresented to the Copyright Office that there were "no prior registrations of earlier versions of those songs" despite Defendant's knowledge of the earlier Absent Element copyrights. (Id.)

fraud and seeks a constructive trust. The underlying theory advanced is that Defendant owed a fiduciary duty to his partners and then breached that duty by failing to account to Plaintiffs for profits, by retaining profits for himself, by failing to disclose that the songs in question were created pursuant to the partnership agreement, and by failing to disclose that at least "Breakdown" and "You Don't Belong" were jointly authored under the partnership agreement. (Id. ¶¶ 60, 64.) More generally, the complaint states that "[a]t no point did Plaintiffs authorize [Defendant] to exploit for his own sole benefit partnership property, matters created in furtherance of the partnership, partnership affairs, or the proceeds or profits derived therefrom, including, without limitation, songs written in furtherance of Absent Element." (Id. ¶ 62.)

The second cause of action seeks a statutory accounting under North Carolina's Uniform Partnership Act, N.C. Gen. Stat. § 59-52. The claim asserts that "Plaintiffs are entitled to an accounting of all profits and proceeds [Defendant] has derived and obtained from partnership affairs, including, without limitation, all profits and proceeds" associated with the disputed songs. (Id. ¶ 70.)

The third cause of action is for an accounting based on common law and injunctive relief. It appears that this claim is identical to the statutory accounting claim, except that it is

8

premised upon Defendant's breach of his fiduciary duty rather than upon a statute. (Id. ¶ 73.) Further, this claim also seeks a permanent injunction that orders an accounting and requires Defendant to provide each partner his share of the proceeds. (Id. ¶ 74.)

The fourth cause of action asserts violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1. Defendant's unfair and deceptive actions are alleged to include the following: demands that Plaintiffs stop selling the "Uprooted" album while Defendant continued to profit, failure to account to Plaintiffs profits and proceeds, retention of profits by Defendant and failure to share with his partners, failure to disclose to others that the songs were subject to the partnership agreement, and failure to disclose to others that at least some songs were jointly authored. (Id. ¶ 77.)

The fifth claim for unjust enrichment is pleaded in the alternative "to the extent the wrongful conduct of [Defendant], as alleged herein, does not fall within the subject matter of his partnership agreement[.]" (Id. ¶ 80.) This common law claim is based on the argument that Defendant accepted the benefits of the partnership and it would be inequitable to allow him to reap all the profits from the musical works for himself. (Id. ¶¶ 81-83.)

9

## II.  ANALYSIS

Before the court are Plaintiffs' motion to remand and Defendant's motion to dismiss.  Ordinarily, when a court is faced with simultaneous motions to remand and dismiss, it should resolve the remand motion first so as to establish whether subject matter jurisdiction exists.  In re Bear River Drainage Dist., 267 F.2d 849, 851 (10th Cir. 1959); see also Stafford EMS, Inc. v. J.B. Hunt Transp., Inc., 270 F. Supp. 2d 773, 774 (S.D.W. Va. 2003).  Accordingly, the court begins with the motion to remand.

### A.  Motion to Remand

A federal court will have jurisdiction over a removed action if the case originally could have been brought in federal court.  See 28 U.S.C. § 1441(a).  However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  Id. § 1447(c).  Any doubts regarding the propriety of removal are resolved in favor of remand, as federal courts must construe removal jurisdiction narrowly.  See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).  The burden rests with the party who has removed an action to federal court to demonstrate the court's jurisdiction.  Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (citing Mulcahey, 29 F.3d at 151).

10

A federal court will have subject matter jurisdiction in a removed action if: (1) there is diversity jurisdiction (28 U.S.C. § 1332); (2) the face of the "well-pleaded" complaint raises a federal question (28 U.S.C. §§ 1331,[2] 1338[3]); or (3) the state law claim is completely preempted by federal law. <u>Lontz v. Tharp</u>, 413 F.3d 435, 439 (4th Cir. 2005). The parties do not assert that diversity jurisdiction is at issue. Rather, Defendant argues that all claims raise a federal question and that, alternatively, the claims for constructive fraud, unfair and deceptive trade practices, and unjust enrichment are completely preempted by the Copyright Act. Plaintiffs contend that all five of the complaint's causes of action are based purely on state law and raise no federal question.

## 1. Federal Question Jurisdiction

For removal to rest on federal question jurisdiction, an essential element of the claim on the face of a plaintiff's

---

[2] Section 1331 provides that the federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[3] Section 1338(a) provides: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." The court will "apply the same test to determine whether a case arises under § 1338(a) as under § 1331." <u>Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.</u>, 535 U.S. 826, 829-30 (2002); <u>see also</u> <u>Gunn v. Minton</u>, --- S. Ct. ----, 2013 WL 610193, at *5 (Feb. 20, 2013).

complaint must raise a federal question. <u>Gully v. First Nat'l Bank</u>, 299 U.S. 109, 112 (1936); <u>Lontz</u>, 413 F.3d at 439. Under the "well-pleaded complaint" rule, a plaintiff is the master of his complaint, and where he could state claims under both state and federal law, he can prevent federal jurisdiction by resting only on the state claims. <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987). However, even the presence of a federal issue in a state cause of action does not automatically confer jurisdiction on the federal court. <u>Merrell Dow Pharms., Inc. v. Thompson</u>, 478 U.S. 804, 813 (1986). Therefore, the fact that a state law claim involves copyrighted material does not, in and of itself, create federal question jurisdiction. <u>Arthur Young & Co. v. City of Richmond</u>, 895 F.2d 967, 969 (4th Cir. 1990).

Defendant contends that each cause of action alleged not only involves copyrighted material, but requires the resolution of Plaintiffs' rights under the Copyright Act because co-ownership by virtue of co-authorship is one of the bases of liability alleged. Defendant therefore relies on a line of cases that hold that where co-ownership is implicitly at issue, federal jurisdiction exists. <u>See, e.g.</u>, <u>Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.</u>, 510 F.3d 77, 84 (1st Cir. 2007); <u>Carell v. Shubert Org., Inc.</u>, 104 F. Supp. 2d 236, 246 n.6 (S.D.N.Y. 2000). Plaintiffs argue that this test does not control where each claim also contains

12

an alternate theory independent of the Copyright Act. Plaintiffs are correct.

The Supreme Court has stated that federal jurisdiction "demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005). Accordingly, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, --- S. Ct. ----, 2013 WL 610193, at *5 (Feb. 20, 2013).[4]

However, "arising under" jurisdiction does not necessarily exist simply because a plaintiff "alleges a single theory [of a claim] under which resolution" of a federal question is essential. Christianson v. Colt Indus. Operating Corp., 486

_____

[4] Additionally, courts, including the Fourth Circuit, have evaluated whether a claim arises under the Copyright Act specifically by applying the test articulated in T.B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir. 1964), which assesses whether the complaint (1) is for a remedy expressly granted by the Copyright Act, i.e., infringement, (2) asserts a claim that requires construction of the Copyright Act, or (3) involves a distinctive policy of the Copyright Act that requires that federal principles control the case. Arthur Young & Co., 895 F.2d at 970; but see Cambridge, 510 F.3d at 96 n.20 (noting that the T.B. Harms test is not a reliable test to establish the presence of federal question jurisdiction).

13

U.S. 800, 810 (1988).[5]  If "on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes" of the federal laws why a plaintiff may be entitled to the relief he seeks, the claim does not arise under those federal laws.  Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 26 (1983); see also Dixon, 369 F.3d at 816 ("A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue." (emphasis in original))[6]; Mulcahey, 29 F.3d

---

[5]  In Christianson, the plaintiff claimed monopolization under the Sherman Act, 15 U.S.C. § 2, alleging several theories; one theory contended that the defendant was monopolizing the market by wrongfully advising customers that the plaintiff was violating the defendant's trade secrets when, in fact, there were no trade secrets because defendant's underlying patents were invalid; the remaining theories were unrelated to any patent issue.  486 U.S. at 811.  The defendant argued that the claim arose under federal law because it put the validity of the patents at issue.  Id. at 810-11.  The Seventh Circuit agreed with the defendant, finding that the only theory under which the plaintiff could prove willful monopolization was one involving the invalidation of the defendant's patents, thus raising a substantial federal question under section 1338(a).  Id.  The Supreme Court disagreed.  Because the plaintiff's complaint provided an alternative theory that did not involve a question of patent law, the Court concluded, the entire monopolization claim did not "arise under" patent law.  Id. at 811.

[6]  In Dixon, the plaintiff claimed that his termination from his employment (for displaying a Confederate battle flag) was unlawful under § 16-17-560 of the South Carolina Code.  369 F.3d at 814.  This section made it unlawful to discharge an employee "because of political opinions or the exercise of political rights and privileges guaranteed . . . by the Constitution and laws of the United States or by the Constitution and laws of [South Carolina]."  Id. at 814-15 (quoting S.C. Code Ann. § 16-17-560).  The defendant removed the case and claimed that the complaint required resolution of a substantial question of federal law.  Id. at 815.  The Fourth Circuit found that

at 153 (stating that "Christianson teaches us that, if a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist").[7]  Therefore, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) [(arising under)] jurisdiction" unless federal law is "essential to each of those theories." Christianson, 486 U.S. at 810.

The court's initial inquiry then is whether, even if a theory of a claim presents a substantial federal question, there is an alternate theory for that claim dependent solely on state law.  This issue, presented as it is here in the context of contractual and other state law claims based on copyright ownership, has been characterized as "among the knottiest

the complaint supported three theories of liability: "(1) Dixon was fired because of his political opinions; (2) Dixon was fired for exercising political rights guaranteed by the United States Constitution; and (3) Dixon was fired for exercising political rights guaranteed by the South Carolina Constitution." Id. at 818.  Of these theories, only the second required resolution of a substantial question of federal law, and federal jurisdiction was therefore inappropriate. Id. (stating that "although Dixon's complaint does reference the First Amendment, none of its causes of action rely exclusively on a First Amendment violation to establish [defendant's] liability").

[7]  In Mulcahey, the court found alternative theories for the plaintiff's negligence claim because, in addition to claiming negligence per se for violations of federal environmental laws, the complaint alleged negligence in violation of state and local laws. 29 F.3d at 153–54.

procedural problems in copyright jurisprudence." Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 347 (2d Cir. 2000) (quoting MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT ("NIMMER ON COPYRIGHT") § 12.01[A]). In making the assessment, the court must be cognizant that it "walk[s] a fine line between usurping the power of the state courts and providing redress for copyright infringement." Image Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1050 n.7 (10th Cir. 2006) (quoting Scholastic Entm't, Inc. v. Fox Entm't Group, Inc., 336 F.3d 982, 985-86 (9th Cir. 2003)).

Upon examination, it is apparent that Defendant's contention that a substantial federal question is raised because the complaint necessarily raises the issue of copyright ownership lacks merit. The complaint reveals that Plaintiffs have carefully pleaded their claims to avoid federal question jurisdiction. Plaintiffs base their right to an accounting and attribution[8] credit on several theories: the parties' written agreement to share authorship and profits from the musical works at issue (Doc. 3 (Compl.) ¶ 22); the parties' agreement to share

---

[8]   Defendant does not seek to premise removal on any claim by Plaintiffs for copyright attribution in connection with Defendant's works.  See Doc. 18 at 11 ("Mr. Daughtry did not remove this case based on their claims for attribution.")  Cf. UMG Recordings, Inc. v. Disco Azteca Distribs., Inc., 446 F. Supp. 2d 1164, 1178 (E.D. Cal. 2006) (noting it is "well established that the right to attribution is not a protected right under the Copyright Act").

16

*proceeds* from the works at issue, irrespective of authorship (id. ¶ 20); by operation of the band's partnership arrangement generally (id. ¶ 21); and co-authorship of some of the works by some of the Plaintiffs (id. ¶¶ 54).[9]  Significantly, each cause of action incorporates paragraph 20 of the complaint, which is the paragraph that alleges that the partners agreed to "equally share in the profits from any songs written by any of the partners as members of and in furtherance of Absent Element, irrespective of the extent of any one band member's contribution to a particular song."  (Id. ¶ 20.)  This allegation of an agreement to share the proceeds from the songs at issue irrespective of ownership suffices to prevent the first four causes of action, which clearly rely on it, from being the basis for removal.[10]

The fifth cause of action requires closer examination.  It is more narrowly tailored, seeking recovery for unjust enrichment "to the extent the wrongful conduct of [Defendant],

---

[9]  Under copyright law, each co-owner acquires an undivided whole interest in the copyright, 17 U.S.C. § 201(a); NIMMER ON COPYRIGHT § 6.05; see also Pye v. Mitchell, 574 F.2d 476, 480 (9th Cir. 1978), and thus has the independent right to use or license the copyright, Oddo v. Ries, 743 F.2d 630, 633 (9th Cir. 1984).  However, a co-owner who uses the copyright must account to other co-owners for any profits he earns from use of the copyright.  Oddo, 743 F.2d at 633; Erickson v. Trinity Theatre, Inc., 13 F.3d 1061, 1068 (7th Cir. 1994).

[10]  Defendant's challenge to the merits of any partnership basis for Plaintiffs' claims (see Doc. 21) is not for this court to decide on motion for remand.

17

as alleged herein, does not fall within the subject matter of his partnership agreement with Plaintiffs." (Id. ¶ 80.) The claim is premised on the following principal allegation:

> In particular, Plaintiffs jointly participated in the partnership with Daughtry with the expectation and understanding that each partner, including Daughtry, would perform his duties and obligations, and would not undermine or divert from the other partners proceeds from partnership affairs. Each partner, including Daughtry, consciously accepted the benefits of their partnership arrangement, including the monies they received from partnership affairs, including writing, recording, selling and performing songs as Absent Element. These benefits were not provided gratuitously.

(Id. ¶ 81.) Plaintiffs allege that despite accepting these benefits, Defendant acted wrongfully by "fail[ing] to share equally with Plaintiffs all profits and proceeds" from the works in question so as to "deprive[] them of their fair share of the benefits of the parties' common venture." (Id. ¶ 82.)

Even though this claim excludes any allegation of an express agreement, it nevertheless rises or falls on the alleged relationship between the parties and the scope of North Carolina law applicable to that relationship. The claim therefore does not require the determination of any copyright issue[11] and,

---

[11] Under North Carolina law, the theory of unjust enrichment is that a person should not be able to enrich himself unjustly at the expense of another, and the remedy is imposed where no recovery in law exists. Stauffer v. Owens, 214 S.E.2d 240, 241 (N.C. Ct. App. 1974) (affirming unjust enrichment recovery in lieu of partnership claim). Here, Plaintiffs' claim for unjust enrichment, while pleaded in the alternative to an express agreement, nevertheless purports to rely on

18

consequently, does not arise under federal law.  <u>Cambridge</u>, 510
F.3d at 81 n.1 (stating that a claim does not arise under the
Copyright Act when "co-ownership may be determined . . . through
other ownership interests governed by state law").

Defendant's reliance on cases that hold that a federal
question is raised where co-ownership is at issue is unavailing
because those cases are distinguishable and do not involve
separate, non-Copyright Act bases for ownership or proceeds, as
alleged here.  For example, in <u>Gaiman v. McFarlane</u>, 360 F.3d
644, 652-53 (7th Cir. 2004), the court found that the
plaintiff's separate claim for declaratory judgment of co-
ownership, which was predicated on plaintiff's contributions as
co-author, arose under and was governed by the statute of
limitations within the Copyright Act.  <u>Id.</u>  Here, there is no
separate claim predicated solely on co-authorship.  In
<u>Cambridge</u>, 510 F.3d at 86, jurisdiction was based on diversity,
and the court was again determining a statute of limitations
issue.  Applying the "parallel reasoning" of the "arising under"
jurisdiction analysis, the court found that plaintiff's claims
for an accounting and unjust enrichment arose under the
Copyright Act because they required a predicate showing of co-

_____

the parties' alleged partnership arrangement.  Whether this states a
claim for relief under North Carolina law is not for this court to
decide at this stage.  What is clear, however, is that the claim does
not rely exclusively on a claim arising under federal law.

19

ownership, which in turn was based on an individual's alleged contribution as co-author under the Copyright Act.[12] Id. at 84-87. Cf. Dead Kennedys v. Biafra, 37 F. Supp. 2d 1151, 1153 (N.D. Cal. 1999) (noting that "[a]n action for an accounting or determination of ownership as between alleged co-owners is founded in state law and does not arise under the copyright laws" irrespective of "whether co-ownership arises from joint authorship or through co-ownership of rights through a partnership"). Notably, in none of Defendant's cases was the question of an independent state law basis under Christianson raised, which is not surprising to the extent those cases were not examining federal subject matter jurisdiction.

Defendant also argued at the hearing that he alone owns the copyright in the works and that determination of his exclusive ownership raises a federal question giving rise to this court's subject matter jurisdiction. This argument fails, too. Because the court applies the well-pleaded complaint rule, federal question jurisdiction cannot arise in connection with a defense, even if the defense is anticipated in the complaint or the parties agree it is the only true question at issue in the case. Franchise Tax Bd., 463 U.S. at 14.

Finally, Defendant claims that federal question

---

[12] Cambridge has been criticized and suggested by some to be limited to its "unique" facts. NIMMER ON COPYRIGHT § 12.01[A][1][d][iii].

jurisdiction exists because Plaintiffs' claims will require a determination whether Defendant's works are "derivative works" under the Copyright Act,[13] relying on XCEL Data Sys., Inc. v. Best, No. 1:08-CV-00613-OWW-GSA, 2009 U.S. Dist. LEXIS 34904 (E.D. Cal. 2009). Defendant's argument is unpersuasive. In XCEL Data, the plaintiff sought a declaration not only that it owned the copyright in the plaintiff's materials the defendant used, but further that it exclusively owned the copyright in the complete derivative work. Id. at *20. The court accordingly found that this presented a federal question because "[i]n declaring each party's respective ownership rights, it is necessary to examine and interpret both the original and derivative [works] and decide the scope of each copyright." Id. (emphasis added). Here, in contrast, Plaintiffs are not pursuing any claim of ownership in the subsequent "Daughtry" songs. Plaintiffs' position is that Defendant's works are at best derivative works, which they conceded at the hearing they

---

[13] 17 U.S.C. § 101 provides: "A 'derivative work' is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'" A co-owner of a copyright may create a derivative work, Weinstein v. Univ. of Ill., 811 F.2d 1091, 1095 (7th Cir. 1987), but enjoys exclusive ownership only over the new elements; the underlying copyright is not affected in any way, NIMMER ON COPYRIGHT § 6.05.

do not contest; Plaintiffs simply seek an accounting for those portions of the derivative works that come from the Absent Element songs. Consequently, XCEL Data is distinguishable and there is no need for construction of the Copyright Act. Moreover, because the complaint also relies on the alternative theory that Plaintiffs are entitled to an accounting for proceeds based on the alleged partnership agreement irrespective of ownership, there is no federal question jurisdiction under Christianson.[14]

Therefore, because the complaint relies on theories of ownership and recovery of proceeds arising from express agreement and other state law bases – and not exclusively under the Copyright Act – Plaintiffs' claims for Defendant's failure to account for proceeds and/or share songwriting credits do not arise under federal law. Dixon, 369 F.3d at 818 (finding removal improper where none of the complaint's causes of action relied exclusively on a federal question).

---

[14] Defendant also argues that, because the Copyright Act requires that any transfer of a copyright be in a signed writing, 17 U.S.C. § 204(a), the court will have to construe the Copyright Act in assessing Plaintiffs' claim that copyrights in the original works were transferred to the partners and/or partnership. Even assuming (without deciding) that such a contention would raise a federal question, Defendant overlooks the fact that Plaintiffs have raised alternate state theories for their claims which, under Christianson, preclude removal.

## 2. Complete Preemption

As an alternative ground for federal jurisdiction, Defendant argues that the complaint's constructive fraud, unfair and deceptive trade practices, and unjust enrichment causes of action are completely preempted by federal law, and thus federal jurisdiction exists.[15]

"Preemption does not necessarily confer [federal] jurisdiction, since it is generally a defense to [a] plaintiff's suit and, as such, it does not appear on the face of a well-pleaded complaint." Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 304 (2d Cir. 2004). However, in some circumstances the preemptive force of federal law will be so "extraordinary" that it will convert a state law complaint into one that states a federal claim for the purposes of the well-pleaded complaint rule. Caterpillar, Inc., 482 U.S. at 393.

Such "complete preemption" applies to state law claims preempted by the Copyright Act because the Copyright Act "both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action." Briarpatch, 373 F.3d at 305. Specifically, the Copyright Act expressly preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general

---

[15] Defendant does not argue that the accounting claims are completely preempted. (See Doc. 18 at 14-20.)

scope of copyright as specified by section 106 in works of authorship," 17 U.S.C. § 301(a), with the proviso that "[n]othing in this title annuls or limits any rights or remedies under . . . State [law] with respect to . . . activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106," id. § 301(b)(3). The exclusive rights protected by section 106 are the right to do and authorize the following: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; (4) perform the work publicly; and (5) display the work publicly. Id. § 106.

In Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 229 (4th Cir. 1993), the Fourth Circuit adopted a two-part test to determine if a state law claim is completely preempted by the Copyright Act. First, the court must inquire whether "the work is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102, 103." Id. (quoting Ehat v. Tanner, 780 F.2d 876, 878 (10th Cir. 1985)) (internal quotations omitted). If the work is within the subject matter of copyright, the court must then determine if "the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." Id. State law claims that infringe one of the exclusive rights

24

contained in section 106 are preempted by section 301(a) if the
right defined by state law "may be abridged by an act which, in
and of itself, would infringe on one of the exclusive rights."
Id. (internal quotations omitted). However, "if an extra
element is required instead of or in addition to the acts of
reproduction, performance, distribution or display, in order to
constitute a state-created cause of action . . . there is no
preemption," provided that the "extra element changes the nature
of the action so that it is qualitatively different from a
copyright infringement claim." Id. (emphasis and internal
quotations removed). In determining whether a claim is
qualitatively different from a copyright claim, the court looks
at "what [the] plaintiff seeks to protect, the theories in which
the matter is thought to be protected and the rights sought to
be enforced." Computer Assocs. Int'l, Inc. v. Altai, Inc., 982
F.2d 693, 716 (2d Cir. 1992).

The parties do not dispute that the first prong of the
Rosciszewski test is satisfied, as the copyrighted works at
issue are within the scope of the subject matter of copyright.
See 17 U.S.C. § 102(a) (stating that "[c]opyright protection
subsists . . . in original works of authorship fixed in any
tangible medium of expression . . . Works of authorship include
. . . musical works, including any accompanying words"); Daboub
v. Gibbons, 42 F.3d 285, 289 n.6 (5th Cir. 1995) (a song was

25

within the subject matter of copyright); Butler v. Target Corp., 323 F. Supp. 2d 1052, 1056 (C.D. Cal. 2004) (song lyrics were within the subject matter of copyright). As such, at issue is the second prong of the Rosciszewski test – whether Plaintiffs' state law causes of action are equivalent to any exclusive rights under the Copyright Act. Each of the three causes of action that Defendant argues are completely preempted will be examined to assess whether any contains an "extra element" that would defeat the Copyright Act's preemptive scope.[16]

### a. Claim 1: Constructive Fraud/Constructive Trust

Plaintiffs' constructive fraud claim is premised on the notion that Defendant breached his fiduciary duty to the partnership by exploiting, for his sole benefit, "partnership property, matters created in furtherance of the partnership, partnership affairs, or the proceeds or profits derived therefrom." (Doc. 3 (Compl.) ¶ 62.) In North Carolina, a *prima facie* case for constructive fraud is a showing of a fiduciary duty and a breach of that duty. HAJMM Co. v. House of Raeford

---

[16] Defendant does not argue that the accounting claims (second and third causes of action) are completely preempted by the Copyright Act. (Doc. 18 at 14-20.) See NIMMER ON COPYRIGHT § 12.01[A][1][d][iii] ("An accounting cause of action . . . cannot be deemed completely pre-empted"); see also Cambridge, 510 F.3d at 100 (Cyr, J., dissenting) (noting that the "Copyright Act does not preempt all state-law claims between copyright co-owners, since the Act itself creates no alternative federal cause of action, remedy, or procedural mechanisms to govern such claims").

Farms, Inc., 379 S.E.2d 868, 874 (N.C. Ct. App. 1989). As such, Plaintiffs argue that the "extra element" provided by the constructive fraud claim derives from the partnership agreement and Defendant's breach of his fiduciary duty. Defendant counters that these arguments are mere attempts to assert state law rights that are the equivalent of exclusive rights under the Copyright Act, including the right to reproduce a copyrighted work, the right to prepare a derivative work, the right to perform a copyrightable work, and the right to distribute a work by sale, license, or otherwise.

In applying the Rosciszewski test, the court finds that there is an extra element in the constructive fraud claim that makes the claim qualitatively different from the exclusive rights available under the Copyright Act. "[W]hen a state law violation is predicated upon an act incorporating elements beyond mere reproduction or the like, the [federal and state] rights involved are not equivalent and preemption will not occur." Harper & Row Publishers, Inc. v. Nation Enters., 723 F.2d 195, 200 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985). In this case, the underlying right identified by Plaintiffs in connection with the constructive fraud claim is the right to redress violations of the duty owed to the alleged partnership. As such, the fact that the claim requires a finding that there was a breach of fiduciary duty to begin with

adds an extra element that makes the claim qualitatively different from a claim of copyright infringement. See, e.g., Briarpatch, 373 F.3d at 307 (a claim that requires a finding that there was a breach of a fiduciary duty satisfies the "extra element" test); Oddo v. Ries, 743 F.2d 630, 635 (9th Cir. 1984) (a claim that one partner breached a fiduciary duty owed to another partner is not preempted because "a partner's duty to his co-partner is quite different from the interests protected by copyright"); Daboub, 42 F.3d at 289 (a claim involving breach of fiduciary duty is different in kind from a copyright infringement claim).

Further, the constructive fraud claim is not equivalent to the exclusive rights protected by the Copyright Act because it seeks remedies as between alleged co-owners. See, e.g., Custom Dynamics, L.L.C. v. Radiantz LED Lighting, Inc., 535 F. Supp. 2d 542, 550 (E.D.N.C. 2008) (denying preliminary injunctive relief on grounds that there is no cause of action under the Copyright Act for relief against an alleged co-owner of a copyright). Nothing in Plaintiffs' complaint seeks recovery for infringement or challenges Defendant's right to use the musical works at issue.

Thus, Plaintiffs' constructive fraud claim is not completely preempted by the Copyright Act.

### b. Claim 4: Violation of N.C. Gen. Stat. § 75-1.1 (North Carolina's Unfair and Deceptive Trade Practices Act)

Plaintiffs' fourth cause of action alleges that the Defendant engaged in unfair and deceptive trade practices in violation of the UDTPA, N.C. Gen. Stat. § 75-1.1. Plaintiffs contend that the federal court lacks jurisdiction over this claim because it requires proof of extra elements that preclude a finding of complete preemption. In response, Defendant points to numerous decisions by this court holding that a UDTPA claim is preempted by the Copyright Act, therefore making federal court jurisdiction appropriate. See, e.g., Vogel v. Wolters Kluwer Health, Inc., 630 F. Supp. 2d 585, 593 (M.D.N.C. 2008); Old S. Home Co. v. Keystone Realty Group, Inc., 233 F. Supp. 2d 734, 736-38 (M.D.N.C. 2002).

A *prima facie* case under N.C. Gen. Stat. § 75-1.1 requires a showing that (1) the defendant engaged in an "unfair" or "deceptive" act or practice, (2) the act was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). As these three elements are all that is required to state a claim under the UDTPA, it may initially appear that a UDTPA claim does not require an element beyond that required to constitute a claim for copyright infringement. See Pan-Am. Prods. & Holdings, L.L.C. v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664,

29

698 (M.D.N.C. 2011) (recognizing the surface-level equivalency between elements of a UDTPA violation and elements of a copyright claim). In fact, this court has previously recognized that a UDTPA claim is preempted by the Copyright Act when the violation alleged under the statute is merely the equivalent of copyright infringement. See Vogel, 630 F. Supp. 2d at 593; Iconbazaar, L.L.C. v. Am. Online, Inc., 308 F. Supp. 2d 630, 637 (M.D.N.C. 2004).

The UDTPA is a far-reaching statute that broadly regulates "unfair" and "deceptive" conduct and whose scope is dependent on the conduct alleged to constitute a violation.[17] Pan-Am., 825 F. Supp. 2d at 698. As such, it is possible for a claim under the UDTPA "to rest on conduct apart from that comprising the Copyright Act claim." Id. Therefore, Plaintiffs' allegations may save their UDTPA claim from preemption if they contain elements that render the claim qualitatively different from a Copyright Act violation. Id. ("Put differently, in order to survive preemption, allegations of what constitutes 'unfairness' and 'deception' to support a UDTPA claim must rest on sufficient alleged misconduct separate from, and not controlled by, the

---

[17] In appropriate cases the court may look beyond a mere comparison of the elements and assess the allegations on which a claim is based in order to determine if the claim is preempted by the Copyright Act. Rutledge v. High Point Reg'l Health Sys., 558 F. Supp. 2d 611, 618 (M.D.N.C. 2008) (citing United States ex rel. Berge v. Bd. of Trustees of the Univ. of Ala., 104 F.3d 1453, 1463 (4th Cir. 1997)).

30

Copyright Act."). See Progressive Corp. v. Integon P & C Corp., 947 F.2d 942, 1991 WL 218010, at *6 (4th Cir. 1991) (unpublished table decision) (finding that simple allegations of misappropriation are insufficient to defeat federal jurisdiction.)

In this case, Plaintiffs' complaint does not make any claim of improper use or infringement or seek otherwise to vindicate the exclusive right of ownership of a protected work against misuse. Plaintiffs allege that Defendant failed to share the profits and proceeds associated with "Breakdown," "Gone," and "Home" from the "Daughtry" album and "You Don't Belong" from the "Leave This Town" album. (Doc. 3 (Compl.) ¶ 77.) This allegation does not equate to a claim for copyright infringement. Don Johnson Prods., Inc. v. Rysher Entm't, Inc., No. CV 09-1906 MMM, 2009 WL 1615982, at *7 (C.D. Cal. June 8, 2009) (noting that one copyright co-owner cannot infringe against another co-owner, and accordingly finding that the plaintiff's state law claims were not preempted).[18] Instead, this claim is based on the breach of the parties' fiduciary

---

[18] At the hearing on the present motions, Defendant argued that federal jurisdiction existed because he will dispute Plaintiffs' ownership of the original Absent Element songs and will argue that his works are not derivative works under the Copyright Act. As noted earlier, to the extent Defendant may raise these arguments, they would constitute defenses, which cannot support federal jurisdiction. K2 Am. Corp. v. Roland Oil & Gas, L.L.C., 653 F.3d 1024, 1029 (9th Cir. 2011) ("Federal jurisdiction cannot hinge upon defenses or counterclaims, whether actual or anticipated.").

relationship pursuant to the alleged partnership and partnership agreement. See Innovative Med. Prods., Inc. v. Felmet, 472 F. Supp. 2d 678, 683 (M.D.N.C. 2006); Pan-Am., 825 F. Supp. 2d at 699-700 (finding UDTPA claim was not preempted when the claim was based on an existing relationship between the parties). So, the "infringement-like" cases relied on by Defendant are inapposite.

Moreover, where a plaintiff's allegations under the UDTPA involve misrepresentation, deception, a confidential relationship, or palming off, the claim is not completely preempted by the Copyright Act. Felmet, 472 F. Supp. 2d at 683. Here, Plaintiffs allege misrepresentation, deception, and, most importantly, breach of a confidential relationship. Specifically, they contend that Defendant demanded that they stop selling the album "Uprooted," yet Defendant thereafter exploited certain "Uprooted" songs for his sole benefit. (Doc. 3 (Compl.) ¶ 77.) This allegation does not relate to mere misappropriation, but instead is based on the breach of a confidential relationship and deception. See NIMMER ON COPYRIGHT § 1.01[B][1][e] ("the element of . . . deception . . . is no part of a cause of action for copyright infringement"). Plaintiffs also allege that Defendant failed to account to Plaintiffs the profits and proceeds associated with partnership affairs. (Doc. 3 (Compl.) ¶ 77.) Again, this allegation

32

relates to the breach of a confidential/fiduciary relationship, not misappropriation. See Felmet, 472 F. Supp. 2d at 683.

Simply put, Defendant's alleged unfair and deceptive acts in connection with any failure to share profits with Plaintiffs could not, and do not, arise out of any infringement of Plaintiffs' alleged copyright. Instead, it arises out Defendant's alleged breach of a confidential relationship. Consequently, Plaintiffs' UDPTA claim is not completely preempted by the Copyright Act.

### c. Claim 5: Unjust Enrichment

Plaintiffs' fifth claim is for unjust enrichment. To prevail on this claim under North Carolina law, Plaintiffs must show they conferred a benefit on another, the other party consciously accepted that benefit, and the benefit was not conferred gratuitously. Southeastern Shelter Corp. v. BTU, Inc., 572 S.E.2d 200, 206 (N.C. Ct. App. 2002). This cause of action sounds neither in contract nor in tort, but instead is imposed by law to prevent unjust enrichment of one party at the expense of another. Id.

It is generally stated that "a state law cause of action for unjust enrichment . . . should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter." NIMMER ON COPYRIGHT § 1.01[B][1][g] (footnotes omitted). There will be no complete preemption, however, where

33

a plaintiff can demonstrate that a defendant was unjustly enriched by "material beyond copyright protection." Microstrategy, Inc. v. Netsolve, Inc., 368 F. Supp. 2d 533, 537 (E.D. Va. 2005) (citation omitted).

Plaintiffs contend that their unjust enrichment claim is not preempted by the Copyright Act because state principles of equity related to the claim provide the "extra element" needed to defeat federal jurisdiction. Defendant counters that this claim is no more than Plaintiffs' attempt to present a copyright action under the guise of a state law claim. Specifically, Defendant argues that because the unjust enrichment claim was pleaded in the alternative (i.e., Plaintiffs seek remedies pursuant to this claim only "to the extent the wrongful conduct of Daughtry, as alleged herein, does not fall within the subject matter of his partnership agreement with Plaintiffs" (Doc. 3 (Compl.) ¶ 89), Plaintiffs cannot rely on the duties that flow from the partnership agreement as a basis for finding an "extra element." In support, Defendant cites to multiple cases espousing the general rule that a claim for unjust enrichment is preempted by the Copyright Act. See, e.g., Thomas v. Artino, 723 F. Supp. 2d 822, 835 (D. Md. 2010); Microstrategy, Inc., 368 F. Supp. 2d at 535-36; Kakizaki v. Riedel, 811 F. Supp. 129, 133 (S.D.N.Y. 1992).

34

But, as Plaintiffs counter, all of these cases involved an express copyright *infringement* claim that accompanied the state law claim at issue. As noted, Plaintiffs here make no claim remotely akin to infringement. Plaintiffs concede that Defendant enjoys the right as owner or co-owner to *use* the works, that is: to reproduce the copyrighted works; prepare derivative works; and perform them publicly. The alleged wrongful conduct is not Defendant's use, but rather his "failure to share equally with Plaintiffs all profits and proceeds" so as to "deprive[] them of their fair share of the benefits of the parties' common venture." (Doc. 3 (Compl.) ¶ 82.) Although this cause of action is pleaded in the alternative to any rights arising from the parties' express partnership agreement, it is nevertheless dependent upon whatever rights and duties, if any, the parties may enjoy under state law.[19]

Thus, while there is no extra element that would expressly preclude a finding of complete preemption, it is apparent that the cause of action, in the context of the factual allegations of this case against an alleged co-owner, does not seek to vindicate a right equivalent to that protected by the Copyright Act. Instead, the gravamen of Plaintiffs' claim is Defendant's failure to provide an accounting for his authorized use of the

---

[19] See note 11 _supra_.

copyrighted works in his derivative works. See Levine v. Landy, 832 F. Supp.2d 176, 188 (N.D.N.Y. 2011) (finding unjust enrichment claim not preempted because it "does not seek to vindicate [plaintiff's] rights to distribute, publish, and/or reproduce the photographs" but "[i]nstead, [plaintiff] takes issue with defendants' failure to remit payment to him"); Don Johnson Prods., 2009 WL 1615982, at *7 (finding unjust enrichment claim not preempted where plaintiff's suit against alleged co-owner did not seek "to vindicate the right to prevent infringement"); Custom Dynamics, 535 F. Supp. 2d at 550 (rejecting preliminary injunction request because "[o]ne co-owner of a joint work may not assert a copyright infringement claim against another co-owner"); McCoy v. Scantlin, No. CV 04-371-GHK(RZx), 2004 WL 5502111, at *2 (C.D. Cal. 2004) (finding that "[i]nasmuch as Plaintiff has no copyright claim against Defendant [bandmate] as the putative co-owner of the Compositions, his claims here [for unjust enrichment, unfair competition, and constructive trust] cannot be 'equivalent' to claims within the general scope of copyright," citing NIMMER ON COPYRIGHT § 1.01 n.62); Brown v. Mojo Records, No. CV-00-286-ST, 2000 WL 33244473, at *7 (D. Or. June 6, 2000) ("While protecting the rights of the owner or co-owners against all others, the Copyright Act should not preempt the traditional state law

36

jurisprudence over matters relating to the ownership rights and duties that exist between co-owners").

The cases relied upon by Defendant are distinguishable because, upon closer inspection, they all challenged the right of the defendant (sometimes a co-owner) to *use* the copyrighted works. See, e.g., Weber v. Geffen Records, Inc., 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999) (dismissing unjust enrichment claim against putative copyright co-owner as preempted because plaintiff alleged that "defendants' copyrights should not entitle them to the full bundle of privileges that attach to copyright ownership"); Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp. 1308, 1322 (S.D.N.Y. 1997) (finding unjust enrichment claim preempted where based on an allegation of an "unauthorized exploitation" of the work of a co-owner); Strauss v. Hearst Corp., No. 85 Civ. 10017 (CSH), 1988 WL 18932, at *9-10 (S.D.N.Y. Feb. 19, 1988) (finding that "[i]f in fact Hearst's use of the [work] *infringed* a copyright owned by Strauss, then it is possible to say, in a general sense, that Hearst was unjustly enriched at the expense of Strauss, the copyright holder" (emphasis added)); see also Briarpatch, 373 F.3d at 306 (finding unjust enrichment claim preempted because it challenged the defendants' right to prepare a derivative work (movie) based

on the copyrighted work (novel));[20] cf. Levine, 832 F. Supp. 2d

at 188 (finding no preemption of unjust enrichment claim and

distinguishing Netzer and Weber "where the use was unauthorized;

here there was no unauthorized use of the Group B

photographs").[21]

For these reasons, therefore, the court finds that

Plaintiffs' unjust enrichment claim is not completely preempted.

### 3. Summary

Having found neither "arising under" jurisdiction nor

complete preemption over any of Plaintiffs' claims, the court

---

[20] The district court's opinion provides a better articulation of the basis for the unjust enrichment claim that makes clear that use was challenged. Briarpatch, Ltd. v. Geisler Roberdeau, Inc., No. 99 Civ. 9623(RWS), 2002 WL 31426207, at *11–13 (S.D.N.Y. Oct. 10, 2002) (noting Plaintiffs' allegations that one defendant did not own any "right, title, assignment or other interest in or with respect to" the motion picture rights, that such rights were not "lawfully or properly acquired" by defendants, and that the screenplay rights were "owned by, vested in, property of, and belong to" plaintiffs).

[21] Even if the unjust enrichment cause of action were completely preempted, it would not, in the end, prevent remand. "[O]nce a district court determines that a state law claim has been completely preempted and thereby assumes jurisdiction over it, the court must then dismiss the claim for failing to state a cause of action." Briarpatch, 373 F.3d at 309. Although a federal court in this circumstance may allow the plaintiff to re-plead the claim as the proper federal claim, see Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 195 (4th Cir. 2002) (re-characterizing a state law breach of contract claim as a claim under § 502(a)(1)(B) of ERISA where the state law claim was preempted), Plaintiffs cannot do so here because there is no cause of action under the Copyright Act for relief against an alleged co-owner of a copyright, see (Doc. 3 (Compl.) ¶¶ 22-23 (alleging that Plaintiffs are co-owners of the copyrighted compositions at issue with Defendant); Custom Dynamics, 535 F. Supp. 2d at 550; Don Johnson Prods., 2009 WL 1615982, at *7 ("Copyright Act does not grant a co-owner of copyright any rights against another co-owner.").

38

will grant Plaintiffs' motion to remand.

### 4. Plaintiffs' Request for Attorney's Fees

Plaintiffs have requested that the court award their costs and expenses, including attorney's fees, pursuant to 28 U.S.C. § 1447(c), because of Defendant's improper removal of this case. Section 1447(c) provides the basis for a court to award costs and attorney's fees when "the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

The jurisdictional issues involved in cases such as this, where an accounting for copyright use rests on contractual and other state law bases, are widely recognized as difficult and complex. See, e.g., Bassett, 204 F.3d at 347; NIMMER ON COPYRIGHT § 12.01[A]. In light of the complexity of the case, the court cannot say the Defendant's grounds for removal lacked an objectively reasonable basis. Plaintiffs' request for costs and attorney's fees will therefore be denied. See Admiral Ins. Co. v. Abshire, 574 F.3d 267, 280 (5th Cir. 2009) (upholding district court's denial of attorney's fees and costs under section 1447(c) when case presented complex issues).

### B. Motion to Dismiss

Having resolved Plaintiffs' motion to remand in their favor, the court lacks jurisdiction to decide Defendant's motion to dismiss (Doc. 10). The proper course is to deny the motion

39

without prejudice for lack of subject matter jurisdiction. <u>See</u> <u>In re Bear River Drainage Dist.</u>, 267 F.2d at 851 (citing <u>Marchant v. Mead-Morrison Mfg. Co.</u>, 11 F.2d 368, 369 (2d Cir. 1926)); <u>McWilliams v. Monarch Rubber Co.</u>, 70 F. Supp. 2d 663, 666 (S.D.W. Va. 1999).

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiffs' motion to remand (Doc. 15) is GRANTED, Defendant's motion to dismiss (Doc. 10) is DENIED WITHOUT PREJUDICE AS MOOT for lack of subject matter jurisdiction, and the action is REMANDED to the General Court of Justice, Superior Court Division, Guilford County, North Carolina pursuant to 28 U.S.C. § 1447(c).


  /s/   Thomas D. Schroeder
United States District Judge


February 22, 2013